22

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

GREGORY N. McKNIGHT,

Defendant.

Case No. 2:26-cv-13022

Hon. Mark A. Goldsmith

Related Criminal Case No. 4:12-cr-20101

FILED
NOV 03 2026
CLERK'S OFFICE
DETROIT

## Defendant's Hearing Brief for the November 18, 2026 Garnishment Hearing

Defendant Gregory N. McKnight, appearing pro se, submits this brief for the remote hearing on his Objection to Garnishment (ECF 31), set for November 18, 2026, at 3:30 PM Eastern (ECF 36). This brief contains my full statement and the figures I rely on; at the hearing I will summarize it.

Under 28 U.S.C. § 3202(d), the hearing is limited "to the probable validity of any claim of exemption by the judgment debtor" and "to compliance with any statutory requirement for the issuance of the postjudgment remedy granted." My objections fall squarely within both. I address the most urgent first.

This is also the hearing on my written objection to Navy Federal's Answer. Within 20 days after receiving a garnishee's answer, the judgment debtor "may file a written objection to the answer and request a hearing." 28 U.S.C. § 3205(c)(5). My Notice of Statutory Exemption Conflict (Dkt. 34), dated September 15 and filed September 22, 2026, within 20 days after I received the Answer on or about September 3, 2026, is that objection; it states its grounds and was served on AUSA Nathan and on Navy Federal (PageID.202-208). Dkt. 31 (with my sworn affidavit) and Dkt. 32 also requested a hearing under § 3202(d). The scope of a § 3205(c)(5)

hearing is broader than § 3202(d): "the scope of objections under section 3205(c)(5) is not limited; a debtor may raise any objection, provided it pertains to the writ of garnishment." *United States v. Crowther*, 473 F. Supp. 2d 729, 731 (N.D. Tex. 2007). The objections below to the amount stated in the writ and to the order's payment terms pertain to this writ.

### 1. My VA disability benefits are exempt by statute, and they are frozen.

I am a Navy veteran, honorably discharged. The VA rates me 100 percent service-connected, totally and permanently disabled. My VA benefit letter of September 18, 2026, filed as Supplemental Exhibit B (ECF 35, PageID.217-218), shows a combined service-connected evaluation of 100%, a current monthly award of $4,158.17, and that I am totally and permanently disabled due solely to service-connected disabilities.

The restitution statute itself protects those funds. Section 3613(a) of Title 18 allows enforcement against all property, "except that," in paragraph (1), "property exempt from levy for taxes pursuant to section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986 shall be exempt from enforcement of the judgment under Federal law." Section 6334(a)(10) covers "Any amount payable to an individual as a service-connected ... disability benefit" under chapter 11 of Title 38. My VA disability compensation is paid under 38 U.S.C. chapter 11, and 18 U.S.C. § 3613(a)(1), incorporating 26 U.S.C. § 6334(a)(10), makes it "exempt from enforcement of the judgment under Federal law," even for restitution. The letter (ECF 35, PageID.217-218) states that the award is for service-connected disabilities; VA compensation for service-connected disability is paid under 38 U.S.C. chapter 11.

Congress wrote that exemption into the same section the Government relies on to collect. It is not a technicality.

### 2. The Navy Federal writ came without the Treasury notice, so my Social Security deposits were protected too.

The Government filed its request for the Navy Federal writ on July 29, 2026 (ECF 22). The writ issued July 29, 2026, and was entered on the docket August 13, 2026 (ECF 27). Navy Federal notified me on August 25 that my accounts were restricted for $31,344,396.71 (Supplemental Exhibit A, ECF 35, PageID.215), and filed its Answer on September 1, 2026 (ECF 30). No Notice of Right to Garnish Federal Benefits was attached: the issued writ, ECF 27, consists only of the writ and the Clerk's Notice for Writ of Continuing Garnishment (PageID.139-147), and

the docket lists ECF 22's only attachment as the "Writ of Continuing Garnishment and Clerk's Notice."

The Government's writ to Navy Federal did not include the Notice of Right to Garnish Federal Benefits described in 31 C.F.R. Part 212, Appendix B. Without it, 31 C.F.R. §§ 212.4(c) and 212.6(a) required Navy Federal to leave my last two months of VA and Social Security deposits available, and § 212.6(c) makes that amount "conclusively considered to be exempt from garnishment under law." I ask that at least that amount be released now, and the remaining VA funds under 18 U.S.C. § 3613(a)(1).

## 2A. What Navy Federal's Answer shows, and what it leaves out.

Navy Federal's Answer (Dkt. 30) reports that at service the three accounts together held $586.75: checking ending 8497, $520.78; checking ending 0907 (my VA account), $15.89; and savings ending 0435, $50.08 (PageID.168). My sworn affidavit states that account 0907 receives only VA disability compensation and account 8497 receives only Social Security benefits (Dkt. 31, PageID.174-178). Since service, my VA compensation ($4,158.17 a month) and my net Social Security ($1,742.50 a month after the Treasury offset) have kept arriving in the restricted accounts. Nearly all of the money frozen today is therefore benefit deposits made after service, and the Answer does not address them at all.

The Answer also answers "No" to prior garnishments or court-ordered withholdings (PageID.169), even though § 3205(c)(4)(C) calls for "a description of any previous garnishments to which such property is subject," and the United States is already taking 15 percent of the same Social Security payment at the source for this same debt (Dkt. 35, Ex. C, PageID.220).

Additional authority for the VA exemption. For restitution, the exemptions that apply are those in 18 U.S.C. § 3613(a)(1), not 28 U.S.C. § 3014. 18 U.S.C. § 3613(a)(2), (f). The Clerk's Notice served with this writ itself lists "[c]ertain service-connected disability payments. 26 U.S.C. § 6334(a)(10)" among the available exemptions (Dkt. 27, PageID.144), and the Government's own response cites *United States v. Nash*, 175 F.3d 440, 443 (6th Cir. 1999), for the point that the § 6334 exemptions apply to § 3613 enforcement (Dkt. 21, PageID.98-100). Nash holds that § 3613(a) permits enforcement "with the exception of those exemptions found in 26 U.S.C. § 6334." 175 F.3d at 443. Separately, 38 U.S.C. § 5301(a)(1) provides that VA benefit payments "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any

legal or equitable process whatever, either before or after receipt by the beneficiary." Construing the predecessor of § 5301 (then 38 U.S.C. § 3101(a)) in a private-creditor case, the Supreme Court held that deposited VA benefits remained protected where they were "readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments." *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159, 162 (1962). Section 3613(a)(1) expressly preserves the § 6334(a)(10) exemption for service-connected disability benefits, so Congress chose to keep those benefits out of restitution enforcement. Under *Porter*, VA benefits kept in a checking or savings account and available for my support keep their protected character after deposit. I also preserve the argument that VA compensation deposited after the writ issued was still an "amount payable" under § 6334(a)(10) when the writ issued.

Social Security. My Social Security point is narrower, and I state it candidly. Section 3613(a) applies "[n]otwithstanding any other Federal law (including section 207 of the Social Security Act)," so 42 U.S.C. § 407 does not by itself bar enforcement of restitution against Social Security. But the United States already collects 15 percent of that payment at the source, and how much of the deposited remainder may also be restrained, in addition to the protected amount under 31 C.F.R. Part 212 discussed above, is a question for this hearing.

Findings before turnover. The writ directs Navy Federal not to deliver property until the Court orders distribution (Dkt. 27, PageID.139-142), and the Answer says, "DO NOT DISBURSE PROPERTY UNTIL FURTHER COURT ORDER" (Dkt. 30, PageID.169). A writ reaches only property "in which the debtor has a substantial nonexempt interest." 28 U.S.C. § 3205(a), (c)(2)(F). Before restrained funds are turned over, the Court should make findings on whether the funds are actually reachable under the statutes the Government relies on. *See United States v. Carson*, 55 F.4th 1053 (6th Cir. 2022) (vacating a turnover of a restitution debtor's funds "[b]ecause the district court failed to make the minimal findings necessary to determine whether Carson's funds fell within these statutes," i.e., 18 U.S.C. §§ 3613, 3664(k), and 3664(n)). The disposition order follows "within 5 days after the hearing, or as soon thereafter as is practicable." 28 U.S.C. § 3205(c)(7). At a minimum, no VA-traceable funds should be remitted to the United States; that costs the Government nothing if it ultimately prevails.

### 3. The harm is real and continuing.

My account at Navy Federal has been frozen since at least August 25, 2026, the date of Navy Federal's freeze email (Supplemental Exhibit A, ECF 35, PageID.215). The frozen amount is approximately $8,200, based on my most recent statements; the exact figure may be somewhat higher. Those are the funds I live on, and the freeze has kept me from paying ordinary living expenses, including my home mortgage.

On top of the freeze, the Treasury Offset Program already takes 15 percent of my Social Security: the Treasury notice dated September 3, 2026 shows $307.50 "Applied To This Debt" from a $2,050.00 Social Security payment, with the U.S. Attorney, Eastern District of Michigan, as the creditor agency (Supplemental Exhibit C, ECF 35, PageID.220). Money paid back months from now does not cover my mortgage, food, or medical bills that are due today. My motions to stay, ECF 7 (filed June 12, 2026) and ECF 19 (filed July 15, 2026), have been fully briefed since my reply on July 30, 2026 (ECF 23), and my Emergency Motion for Immediate Release of Exempt Funds (ECF 32) and my objection (ECF 34) also remain undecided. The Government has not responded to ECF 31, 32, or 34. My Motion to Expedite (ECF 37; Crim. ECF 76), mailed October 13, 2026 and filed October 23, 2026, asked the Court to rule on them, citing 28 U.S.C. § 1657(a) and Fed. R. Civ. P. 1. My motions to stay (ECF 7, 19) remain pending as to all of the writs in this case, and I do not waive them. I ask that the Court rule on all of them at or promptly after this hearing. Each month the harm grows.

### 4. Why an accounting is needed.

The Government's own notice told me the amount I owe would be at issue in this hearing. The Clerk's Notice served with this writ, which counsel for the United States prepares under 28 U.S.C. § 3202(b), states that I "have a right to ask the Court to return your property to you if you think you do not owe the debt to the Government, or if you think the property the Government seeks qualifies under one of the above exemptions" (ECF 27, PageID.144-145). It then says, citing § 3202(d): "At the hearing you must be prepared to explain to the judge why you believe the property the Government seeks is exempt or why you think that you do not owe the debt to the Government." (ECF 27, PageID.145.) I am doing exactly what that notice told me to do. Whether I owe the amount claimed, and what the current balance is, is squarely before the Court. The notice itself recites a judgment "in the sum of $48,969,660.00" and states that "[a] balance of

$31,344,396.71 remains outstanding as of July 29, 2026" (ECF 27, PageID.143). That base is $100 more than the $48,969,560.00 my Judgment orders.

The balance is also properly before the Court under § 3202(d) on its own terms. That section allows this hearing to address "compliance with any statutory requirement for the issuance of the postjudgment remedy granted." Two of those requirements go to the amount. The Government's application "shall include ... the nature and amount of the debt owed." 28 U.S.C. § 3205(b)(1)(B). And the writ "shall state — (A) The nature and amount of the debt, and any cost and interest owed with respect to the debt." 28 U.S.C. § 3205(c)(2)(A). The restitution statute likewise contemplates a stated balance: a restitution order "shall include ... the original amount of the fine or restitution order and the amount that is due and unpaid." 18 U.S.C. § 3612(b)(1)(C). The Government has given three figures that cannot all be right: $48,957,585.04 on July 23, 2026 (ECF 21, PageID.100); $31,344,396.71 on this writ six days later; and a base that is $100 higher than my Judgment. On this record the Government cannot show that the writ stated the correct amount of the debt. That is a failure of a statutory requirement for issuing the writ, and it is properly decided at this hearing. I recognize that, as the party objecting to the Answer, I "bear the burden of proving" my grounds. 28 U.S.C. § 3205(c)(5). I meet it with the Government's own records: its conflicting balances, its $100-high base, and its admission that its reconciliation with the receiver was unfinished. No statute requires the Government to certify its balance on its own; that is why I ask the Court to order a sworn declaration under § 3013, as set out in the Relief Requested. The Government's own figures do not agree. Its application states that "$17,625,263.29 has been credited to the judgment debt, leaving a total balance due of $31,344,396.71 as of July 29, 2026" (ECF 22). The writ recites a judgment of $48,969,660.00, but my Judgment orders $48,969,560.00 (Crim. ECF 16, PageID.114). No interest can explain any difference: the Court ordered that "[i]nterest shall not accrue" (Crim. ECF 17, PageID.142), and the Judgment waives interest on restitution (Crim. ECF 16, PageID.114). In April 2026 the District of Wyoming, relying on "this Court's records," listed $48,969,560.00 owed, $10,822.92 paid, and $48,958,737.08 outstanding (D. Wyo. Dkt. 13, WYD 70–71). The writ's figure and Wyoming's differ by $100, and the Government's $17,625,263.29 credit does not match the receiver's reported distributions of $17,613,188.33.

The figures also shifted within a week. On July 23, 2026, the Government told this Court that the outstanding balance was $48,957,585.04 (ECF 21, PageID.100) and

that it "is still in the process of reconciling the amounts collected by the Receiver with the United States' balance" (PageID.97). Six days later, the Navy Federal writ stated that $31,344,396.71 was presently owing (ECF 27, PageID.139-142). The application itself must state "the nature and amount of the debt owed." 28 U.S.C. § 3205(b)(1)(B). By the Government's own words, its reconciliation was not finished when it applied for this writ.

The Government's own books show where that $100 comes from. On May 7, 2026, Supervisory Paralegal Specialist Monica Green of the U.S. Attorney's Office sent me my payment history under CDCS No. 2013A72380. That history shows a grand total credited of $17,624,399.26 and a current liability of $31,345,260.74. Those two numbers add up to $48,969,660.00. That is also the "Original Liability Amount" on the Treasury Offset Program report she sent with it. My Judgment says $48,969,560.00. So the Government's base is $100 too high, in its own system, and every balance it has given this Court is built on that base.

The receivership appears in that ledger as one single entry. It is $17,613,188.33, posted March 12, 2025, and the source is listed as "Final Rpt by Reciever 08cv11887 #965." That is spelled as it appears. It is the same net distribution figure from the receiver's final report. It shows no gross collections, no fees, and no expenses. The receiver had promised "a final report and accounting" (SEC v. McKnight, No. 2:08-cv-11887, ECF 926, PageID.12552), but the Final Report contains no receipts-and-disbursements accounting. The order closing the receivership then authorized the receiver to destroy my records and those of the other Receivership Defendants unless, within 30 days after notice to the SEC staff, the SEC requested them or a law enforcement agency subpoenaed them (SEC v. McKnight, ECF 971, ¶ 4, PageID.12968). Nothing in the record shows that the SEC requested those records or that any agency subpoenaed them. Because the Court ordered my restitution forwarded to the receiver for disbursement (Crim. ECF 17, PageID.142), the Clerk's records cannot show everything that was paid or recovered, and any recovery figure offered now cannot be verified against the receiver's records unless the Government swears to it and itemizes each credit.

The ledger also shows what Treasury took from me. Across 39 offsets, from December 2022 through April 2026, the Treasury Offset Program took $11,407.80 from my Social Security benefits. Only $10,610.93 was credited to my restitution. The other $796.87 was kept as Treasury fees. That money came out of my benefits. Under "less any recoveries," every dollar taken from me should be credited, not just what was left after fees.

The ledger has gaps. Each entry has a sequence number. The numbers run from 000003 to 000123, and after 000005 they are odd numbers only. Sequence numbers 000001 and 000002, and every even number from 000006 through 000122, do not appear. I do not know what those entries are, and I am not asking the Court to guess. I am asking that the Government produce the complete transaction history for CDCS No. 2013A72380, including every sequence number.

The Government's figure for what the victims were owed does not match the Judgment either. In the SEC case, the receiver's motion for the fifth and final distribution states: "The total amount of Allowed Claims, as amended from time to time to reflect removal of stale/abandoned claims, is $40,058,526.32." (SEC v. McKnight, No. 2:08-cv-11887, ECF 941, PageID.12690; claims roster at ECF 941-3, PageID.12703–12731). My restitution is $48,969,560.00, which is $8,911,033.68 more than every allowed victim claim combined.

And the Government admits it cannot account for these funds. Ms. Green's letter says, "We are unable to provide specific details regarding the monies paid to specific victim(s)." It also says, "We are not provided with specific information as to the source of the funds received via the Treasury Offset Program."

The record also shows the restitution was to be reduced by recoveries. The Sixth Circuit wrote that "the district court amended the presentence report to indicate that the restitution amount would be reduced by any recoveries" (Crim. ECF 25, PageID.229). The receiver's ninth interim report says that "Judge Goldsmith ordered McKnight to make restitution in the amount of $48,969,560.00 less any amounts recovered by the Receiver" (SEC v. McKnight, No. 2:08-cv-11887, ECF 571, PageID.8329). The receiver's final report says it made distributions to claimants "in the aggregate amount of $17,613,188.33" (SEC v. McKnight, ECF 965, PageID.12936), and the court in the SEC civil case, not this Court, approved that report and closed the receivership on December 19, 2023 (SEC v. McKnight, No. 2:08-cv-11887, ECF 971). Yet my written Judgment does not say "less any recoveries."

I cannot tell from these numbers what the Government says I owe, what it has credited, or what I have paid. Because restitution was stipulated "to be offset by any recovery of assets" (Crim. ECF 25, PageID.229), the offset cannot be applied until the Government shows what was recovered. I ask for a sworn accounting that reconciles these figures and identifies any recovery from any source, and for the Judgment to reflect the reduction for recoveries that the Court ordered. This

request is within the scope of this hearing. Under 28 U.S.C. § 3202(d)(2), the hearing covers "compliance with any statutory requirement for the issuance of the postjudgment remedy granted." The Government's application must state "the nature and amount of the debt owed," § 3205(b)(1)(B), and the writ must state "[t]he nature and amount of the debt," § 3205(c)(2)(A). This writ states that "there is presently owing the amount of $31,344,396.71" (ECF 27, PageID.139), while the Government told this Court six days earlier that I owed $48,957,585.04 (ECF 21, PageID.100). Nothing in the record shows the writ's amount is correct. I am not challenging the restitution order here. I am challenging whether this writ met the law's requirements, and a sworn accounting is the way to answer that.

I raised this at sentencing. When the Court asked whether the restitution figure was accurate as of that date, I answered: "I don't believe so. I don't know how he came up with the figures." (Crim. ECF 17, PageID.119, at 5:13-15.) My lawyer told the Court the figure "will be continuously changing as the receiver collects monies that can be offset against that amount." (Id. at 5:9-11.) Thirteen years later, the Government still cannot give one consistent figure. At that same hearing, the Government itself subtracted receivership recoveries. AUSA Wigod said "the proper restitution amount is $42,551,823.94" (Id. at 5:1-2), and explained that the receiver's claims totaled "a little over 44 million dollars" and "[t]he number that I gave the Court is less 1.5 million dollars that the receiver has distributed back to the victims" (Crim. ECF 17, PageID.120, at 6:11-14). That is what "less any recoveries" means: what was recovered comes off the balance. The Government did it then. It should do it now, under oath.

The sentencing transcript confirms it. At sentencing, the Court directed the probation officer to "add the phrase then on paragraph 59 less any recoveries" (Sentencing Tr. Vol. 2 at 8:1-2, Crim. ECF 17, PageID.122). Before that, the Court asked whether inserting "less any recoveries" was "an accurate way of describing both the Rule 11 agreement and what the law would require here," and AUSA Wigod answered, "Yes." (Id. at 7:20-23, PageID.121.) It then pronounced: "It's further ordered that he pay restitution in the amount of 48,969,560 dollars less any recoveries. Restitution will be forwarded to Robert Gordon at Clark Hill as receiver and Mr. Gordon will disburse restitution to the victims as appropriate." (Id. at 28:16-20, PageID.142.) In 2016, this Court described its ruling as "modifying restitution to reflect an amount 'less any recoveries'" (Crim. ECF 44, PageID.480). In the Sixth Circuit, the sentence pronounced from the bench "controls" over a conflicting written judgment, which "is merely evidence of the

sentence." *United States v. Shaw*, 139 F.4th 548 (6th Cir. 2025). Rule 36 permits conforming the written Judgment to the oral sentence. *United States v. Carr*, 421 F.3d 425, 433 (6th Cir. 2005). I will ask for that correction in the criminal case. The Court's word was "any." "Less any recoveries" is not limited to the receiver's distributions. It reaches any recovery from any source: any receivership distribution, any amount collected through the Treasury Offset Program, any garnishment, any payment through the Bureau of Prisons' Inmate Financial Responsibility Program, and any voluntary payment. Any accounting must therefore show any and every recovery credited, and any that was not. The same goes for expenses. The $17,613,188.33 figure is only what the receiver distributed to claimants. The receiver's final report states that the estate also paid expenses for tax preparation, claims administration, attorney's fees, and receiver fees, and that any remaining cash would be remitted to the SEC (SEC v. McKnight, ECF 965, PageID.12936). Every dollar the receivership collected from my assets was a recovery, whether it went to victims, to fees, to expenses of any type, or to the SEC. The credit against restitution should be total collections, not net distributions. I ask that the accounting state the receivership's total collections and every expense paid from them. The final report does not state total collections. And when the receivership closed, the civil court's order authorized the receiver "to destroy the records of the Receivership Defendants—Gregory N. McKnight" and the related entities, unless the SEC or a law enforcement agency requested them within 30 days (SEC v. McKnight, ECF 971, PageID.12968, ¶ 4). If those records are gone, the only people who can account for total collections are the Government and the SEC. The Government is collecting a balance it can only state net of a figure it cannot document from the receivership's own records. That is the reason a sworn accounting is needed before any more of my funds are taken. Because the civil court in the SEC case, not this Court, authorized those records to be destroyed in ECF 971, the burden is on the Government, not on me. If the Government cannot produce the receivership's gross collections, it should say so under oath and explain why.

The law puts this duty on the Government. Under 18 U.S.C. § 3612(b)(1)(C), an order imposing restitution "shall include ... the original amount of the fine or restitution order and the amount that is due and unpaid." Under § 3612(c), "The Attorney General shall be responsible for collection of an unpaid fine or restitution," and must apply what it receives in a set order: the special assessment first, then restitution. The Government cannot follow that order unless it tracks every dollar. Under 18 U.S.C. § 3664(j)(2), restitution "shall be reduced by any

amount later recovered as compensatory damages for the same loss by the victim in— (A) any Federal civil proceeding." The SEC case is that proceeding. And for this garnishment, 28 U.S.C. § 3205(c)(2)(A) says the writ "shall state — (A) The nature and amount of the debt." A writ that states the wrong amount does not meet that requirement. That is a "statutory requirement for the issuance of the postjudgment remedy" under 28 U.S.C. § 3202(d), so it is properly before the Court at this hearing.

The Sixth Circuit itself found both points when it affirmed on direct appeal. It found that "[t]he parties further stipulated that the full amount of restitution was $48,969,560, to be offset by any recovery of assets," and that "[u]pon McKnight's objection at sentencing, the district court amended the presentence report to indicate that the restitution amount would be reduced by any recoveries." *United States v. McKnight*, No. 13-2075 (6th Cir. June 18, 2014) (order) (Crim. ECF 25, PageID.229). The Plea Agreement itself provides that "the amount of restitution owed by defendant may change over time in that the receiver may, in the future, recover funds that could offset the amount of restitution owed by defendant" (Crim. ECF 7, PageID.24-25), and the Court explained the same to me at my plea (Plea Tr. at 21:24-22:4, Crim. ECF 22, PageID.175-176). So the plea stipulation, the amended presentence report, and the sentence pronounced from the bench all included the offset for recoveries. The written Judgment's omission of those words is a clerical gap, and I ask only that the sentence be enforced as pronounced. The stipulation's words also matter for how recoveries are measured: restitution was "to be offset by any recovery of assets." What is offset is the assets recovered, gross, not only the net amounts later paid to victims.

The Court said I owe restitution "less any recoveries" (Sentencing Tr. Vol. 2 at 28:16-17, PageID.142), and the Sixth Circuit said the same thing twice: restitution was "to be offset by any recovery of assets" and would be "reduced by any recoveries." *United States v. McKnight*, No. 13-2075 (6th Cir. June 18, 2014) (Crim. ECF 25, PageID.229). The word is "any," not "less what the victims received." The Government relies on "any" when it suits them; it cannot read the same word narrowly when it would credit me. The receiver took my assets and used them to pay lawyers, accountants, and claims agents to recover money for the victims. That was a cost of recovering for them. If those assets do not count, I lose them and still owe the full amount. The USAO's label, "monies collected and disbursed to the victims," is its own bookkeeping, not this Court's words, and the Court's oral pronouncement controls. Either way, the Government must show its

gross collections, its fees, and its distributions before "less any recoveries" can be applied at all.

### 5. No payment schedule was ever set.

The Judgment directs "monthly payments on any remaining balance of the restitution at a rate and schedule recommended by the Probation Department and approved by the Court" (Crim. ECF 16, PageID.113). The Court pronounced the same condition at sentencing (Crim. ECF 17, PageID.143). No schedule was ever recommended or approved, before or after supervision was transferred to the District of Wyoming (Crim. ECF 65, PageID.608: supervised release from December 20, 2024 to December 19, 2027; transfer signed March 9, 2025, and accepted by the District of Wyoming effective April 4, 2025), and I never received one from the Probation Office in Wyoming (ECF 35 ¶ 6, PageID.212).

The statute puts the schedule in the Court's hands. The court specifies "the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). Payment is due immediately "unless, in the interest of justice, the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). Here the Court provided otherwise. The six-page Judgment approved Inmate Financial Responsibility Program schedules while I was in custody (Crim. ECF 16, PageID.111). It made it a condition of supervised release that I "pay in accordance with the Schedule of Payments sheet of this judgment" (Crim. ECF 16, PageID.112), but no Schedule of Payments sheet is part of the Judgment, and the Judgment nowhere states that restitution is due immediately. At sentencing the Court made only the $100 special assessment "due immediately" (Sentencing Tr. Vol. 2 at 28:25-29:1, Crim. ECF 17, PageID.142-143); for restitution it ordered "monthly installment payments… at a rate and schedule recommended by probation and approved by the Court" (id. at 29:17-20, PageID.143), and it referred to "the payment schedule" (id. at 29:15, PageID.143). The Government has not asserted that restitution is due immediately or that any schedule exists.

"The government has statutory authority to enforce only the terms of a restitution order." *United States v. Martinez*, 812 F.3d 1200, 1207 (10th Cir. 2015); *see also United States v. Roush*, 452 F. Supp. 2d 676, 681-82 (N.D. Tex. 2006) (government may use § 3613 "only to the extent that restitution payments are currently due and owing under the payment schedule established under section 3664(f)(2), or as modified under section 3664(k)"). Whether a full freeze of my accounts is consistent with the Judgment's monthly-payment terms is an objection that "pertains to the writ of garnishment," *Crowther*, 473 F. Supp. 2d at 731, and is

properly before the Court under § 3205(c)(5). I ask that the Government identify any payment schedule it contends governs collection.

In United States v. Hack, No. 19-6278 (6th Cir. 2021), the Sixth Circuit held that "the failure to set a full restitution payment schedule is error." I will raise this by separate motion in the criminal case. I mention it now because it bears on fairness while the accounting and schedule are unresolved.

For candor, here is everything said in Wyoming on this subject, both what I wrote and what that court wrote.

In my December 2025 motion for early termination, I wrote: "Financial obligations: Financial responsibilities, including restitution where applicable, are being addressed. Repayment plan is in effect." (D. Wyo. Dkt. 2, WYD 24.)

In denying that motion, the Wyoming court wrote that I am "currently on a payment plan whereby [my] monthly restitution payments are garnished from [my] Social Security, and [I have] paid over $10,000 to date in restitution." (D. Wyo. Dkt. 5, WYD 31.)

In my motion for reconsideration, I argued that I was "in compliance with restitution obligations at all relevant times due to ongoing SSA garnishment initiated by the government" (WYD 33). I also wrote that the 2007 condition "did not require voluntary payments, a court-ordered schedule, or a specific payment plan. It required only that the defendant be making payments." (WYD 36.) And I said I was "already compliant through SSA garnishment." (WYD 37.)

In April 2026, the Wyoming court stated that "[t]he restitution has and will continue to be collected and distributed in accordance with the judgment." (D. Wyo. Dkt. 13, WYD 71.) It then held that it "lacks both jurisdiction and direct access to the records," and that "any remedy would lie in the Eastern District of Michigan." (D. Wyo. Dkt. 18, WYD 92.) The Wyoming Deputy Chief Probation Officer told me, "We are monitoring your [restitution] payments." (My declaration, WYD 93, 98.)

None of those statements describes a schedule "recommended by the Probation Department and approved by the Court." The only "plan" anyone in Wyoming pointed to is the Treasury offset of my Social Security, an administrative collection the Government started on its own. It is not a court-approved schedule

under this Court's Judgment. When I said a repayment plan was "in effect," I meant that offset. No schedule of the kind the Judgment requires has ever been set.

### 6. These questions belong in this Court.

The Government told the District of Wyoming that this District "retains jurisdiction over the restitution component of the Criminal Judgment until it is satisfied," and that the Wyoming U.S. Attorney's Office "does not even have access to Defendant's payment history" (D. Wyo. Dkt. 16, WYD 81–82). Judge Skavdahl agreed that "the Eastern District of Michigan retains jurisdiction over Defendant's sentence, including restitution, and any remedy would lie in the Eastern District of Michigan" (D. Wyo. Dkt. 18, WYD 92). I am here because both the Government and that court sent me here.

### 6A. This Court may condition or limit its own writs.

Even if the accounting dispute itself is resolved in my criminal case, No. 4:12-cr-20101, this Court controls the writs issued in this case. Under 28 U.S.C. § 3013, "The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." Garnishment is such a procedure. The Court may therefore condition or limit these writs until the Government files a declaration under penalty of perjury, by a named official with knowledge, certifying the amount ordered, every recovery, and the exact balance due and unpaid.

The record in the criminal case gives a further reason to do so. My Motion for Relief (Crim. ECF 66, filed April 30, 2026) and Supplement (Crim. ECF 68, filed June 9, 2026), as narrowed and restated (Crim. ECF 74, entered October 26, 2026), ask the Court to enforce the sentence as pronounced, "48,969,560 dollars less any recoveries," by a Rule 36 correction of the written Judgment and an accounting of all recoveries credited against restitution. On July 7, 2026, the Government moved under Fed. R. Crim. P. 45(b) for "an additional 90 days to file a response, up to and including October 5, 2026" (Crim. ECF 70, PageID.663); I opposed it (Crim. ECF 71). That October 5 date has passed, there is still no response and no order, and my Notice That the Government Has Not Responded (Crim. ECF 75) and my Motion to Expedite Ruling and to Set Hearing (ECF 37; Crim. ECF 76) are pending. I do not raise those motions for decision here, and I do not waive them. I note only that the Government continues to garnish in this case without a credited accounting of recoveries while its own response on that

very question is overdue. That is a sound reason to condition these writs under § 3013 until the accounting is filed.

The Government's own position confirms the need. On October 27, 2026, in reply to my Local Rule 7.1(a) request for concurrence, counsel for the Government wrote that the relief I seek "is moot, because your restitution balance is already credited with recoveries by the victim in your case by statute. See also 18 USC 3664(j)," and that "the Clerk is the official record keeper of payments, not this office" (Email of AUSA Jessica A. Nathan, Oct. 27, 2026, Exhibit D). That statement concedes that the balance must be reduced by recoveries, as the Court pronounced at sentencing: "48,969,560 dollars less any recoveries." But the Government has not said what was credited, when, or from what source, and its own figures do not agree: $48,957,585.04 in July (ECF 21, PageID.100), and $31,344,396.71 on the writ (ECF 27, PageID.139) against a stated judgment of $48,969,660.00 (ECF 27, PageID.143). The Clerk records only payments made through the Court; the receiver's distributions to victims in the SEC case were not. If recoveries have been credited, the Government can state that balance under penalty of perjury and show each credit. Until it does, no figure the Government offers should be treated as the amount owed.

### 7. Relief Requested

For these reasons, I respectfully ask the Court to:

1. Rule today, at this hearing, on my pending motions: my Motion to Stay Garnishment (ECF 7, filed June 12, 2026) and my Motion to Stay Restitution Enforcement (ECF 19, filed July 15, 2026), both fully briefed since my reply (ECF 23) on July 30, 2026; my Emergency Motion for Immediate Release of Exempt Funds (ECF 32, filed September 9, 2026); and my objection to the Answer (ECF 34). My exempt VA disability funds have been frozen at Navy Federal since August.
2. Order the immediate release of the exempt funds held by Navy Federal Credit Union, including my VA service-connected disability benefits under 18 U.S.C. § 3613(a)(1) and 26 U.S.C. § 6334(a)(10), and the protected amount under 31 C.F.R. § 212.6, and direct that future benefit deposits not be frozen; and, at a minimum, order that no VA-traceable funds be remitted to the United States until the Court makes findings on the exemptions.
3. Under 28 U.S.C. § 3013, order the Government to file, within 30 days or by another date certain the Court sets, a declaration under penalty of perjury under 28 U.S.C. § 1746, signed by a named Government official with personal

knowledge of the records, certifying: (a) the restitution amount ordered, which is $48,969,560.00 in my Judgment, not the Government's $48,969,660.00 base; (b) every recovery from any source, measured as gross collections before fees and expenses of any type, including every receiver distribution and the receiver's gross collections, every Treasury offset (with the $796.87 in Treasury fees taken from my Social Security credited toward restitution), every garnishment, and every IFRP or voluntary payment, supported by the complete CDCS transaction history with every sequence number, or a sworn statement that any of these cannot be produced and why; (c) for each victim in my criminal restitution order, the amount ordered, the amount paid to that victim (including the SEC receivership distributions made through the claims agent, Epiq), and the balance remaining, filed under seal if victim privacy requires it; and (d) the exact current balance due and unpaid as of the date of the declaration. Restitution is owed victim by victim, and 18 U.S.C. § 3664(j)(2) says it "shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in— (A) any Federal civil proceeding." Until that declaration is filed, stay further enforcement and any disbursement of garnished funds.

4. Direct the Government to identify any payment schedule it contends governs collection, and note that no payment schedule has been set under the Judgment, and that I will file a separate motion in Case No. 4:12-cr-20101 asking the Court to set one.

Respectfully submitted,

Gregory N. McKnight, Pro Se

405 Harshman St.

Rawlins, WY 82301

Dated: Oct. 30, 2026

## Certificate of Service

I certify that on Oct. 30, 2026, I served a copy of this Hearing Brief by first-class U.S. Mail on Assistant United States Attorney Jessica Nathan, United States Attorney's Office, Eastern District of Michigan, 211 W. Fort St., Ste. 2001, Detroit, MI 48226.

______________________

Gregory N. McKnight

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,
Plaintiff,
v.
GREGORY N. McKNIGHT,
Defendant.

Case No. 2:26-cv-13022
Hon. Mark A. Goldsmith
Related Criminal Case No. 4:12-cr-20101

# EXHIBIT D

to Defendant's Hearing Brief for the November 18, 2026 Garnishment Hearing

Email from AUSA Jessica A. Nathan to Gregory N. McKnight
dated October 27, 2026

Outlook

**RE: U.S. v. McKnight, 4:12-cr-20101 – Request for concurrence (LR 7.1(a))**

**From** Nathan, Jessica (USAMIE) <Jessica.Nathan@usdoj.gov>
**Date** Tue 10/27/2026 12:01 PM
**To** Greg McKnight <mcgreg22060@gmail.com>
**Cc** Green, Monica (USAMIE) 1 <Monica.Green@usdoj.gov>

Mr. McKnight,

Apologies for the delayed response. Unfortunately, I missed your email. In the future, you can also contact your case manager, Monica Green, cc'ed on this email or at 313-226-9145. You can also call our main office line at 313-226-9100.

Based on the relief you are requesting, please provide a copy of the sentencing transcript. In addition, the relief you are requesting is moot, because your restitution balance is already credited with recoveries by the victim in your case by statute. *See also* 18 USC 3664(j).

Pursuant to 18 USC 3612, the Clerk is the official record keeper of payments, not this office, and you can contact their office for your balance and accounting.

Thank you,

**Jessica A. Nathan**
Assistant United States Attorney
U.S. Attorney's Office, Eastern District of Michigan
U.S. Department of Justice
Email: Jessica.Nathan@usdoj.gov
Phone: 313-226-9100 | Direct: 313-226-9643

Confidentiality Notice: This e-mail message is covered by the Electronic Communications Privacy Act, 18 U.S.C. Section 2510-2521 and is legally privileged. Unauthorized review, use, disclosure or distribution is strictly prohibited. If you are not the intended recipient, please contact the sender at Jessica.Nathan@usdoj.gov, or by reply e-mail, or at the telephone number above, and destroy all copies of the original message.

**From:** Greg McKnight <mcgreg22060@gmail.com>
**Sent:** Wednesday, October 7, 2026 7:46 AM
**To:** Nathan, Jessica (USAMIE) <Jessica.Nathan@usdoj.gov>
**Subject:** [EXTERNAL] U.S. v. McKnight, 4:12-cr-20101 – Request for concurrence (LR 7.1(a))

Ms. Nathan,

I intend to file a Notice of Errata and Partial Withdrawal (ECF Nos. 66, 68, 72, 73) and a Restated Motion for Alternative Relief asking for (1) a Rule 36 correction of the Judgment to conform to the oral sentence ("less any recoveries") and (2) an order that the Government file an accounting of all recoveries credited against restitution. Do you concur in the relief requested? Please reply by October 9, 2026.

Gregory N. McKnight

Gregory N. McKnight, Pro Se
405 Harshman St.
Rawlins, WY 82301

October 30, 2026

Clerk of Court
United States District Court, Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 599
Detroit, MI 48226

**Re: United States v. Gregory N. McKnight, No. 2:26-cv-13022 (Hon. Mark A. Goldsmith)**
**Related Criminal Case No. 4:12-cr-20101**

Dear Clerk:

Enclosed for filing is Defendant's Hearing Brief for the November 18, 2026 Garnishment Hearing, with Exhibit D (Email from AUSA Jessica A. Nathan dated October 27, 2026) and a certificate of service.

Please file the brief in Case No. 2:26-cv-13022. Because its caption also names the related criminal case, please docket it in Case No. 4:12-cr-20101 as well.

This filing is sent to you by FedEx. A copy was served on AUSA Jessica A. Nathan by first-class U.S. Mail.

Thank you for your help.

Respectfully,

Gregory N. McKnight, Pro Se
Defendant, pro se
405 Harshman St.
Rawlins, WY 82301

Align top of FedEx® shipping label here.

ORIGIN ID:CPRA (307) 328-5266
GREGORY MCKNIGHT
GREGORY MCKNIGHT
519 8TH ST

RAWLINS, WY 82301
UNITED STATES US

SHIP DATE: 30OCT26
ACTWGT: 0.60 LB
CAD: 262938672/FAPI2208

BILL SENDER

TO CLERK OF COURT
UNITED STATES DISTRICT COURT E.D.MI
231 W LAFAYETTE BLVD STE 901 RM 599

DETROIT MI 48226
(810) 262-7461 REF: GREGORY MCKNIGHT
INV: PKG ID: 16238
PO: DEPT:

FedEx Express

E

TUE - 03 NOV 5:00P
** 2DAY **

TRK# 0201 8795 0558 4155

SS DTWA

48226
MI-US DTW

4459 MON 11/02 07:01
231 W LAFAYETTE BLVD
48226-2794 26
DETROIT,MI
446-1517FL
ETP: 1 SP:PD:T00:Y

Align bottom of peel-and-stick airbill or pouch here.

FedEx

Envelope

Recycle me

RECEIVED
NOV [illegible] 2026
CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. MARSHALS

RECEIVED
NOV 3 2026
CLERK'S OFFICE
DETROIT